STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-17-11

OLD TOWN UTILITY &
TECHNOLOGY PARK, LLC, et al.

   Plaintiffs,

  v.

MFGR, LLC, et al.

   Defendants.

)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANTS OLD
TOWN HOLDINGS II, LLC AND
JOSEPH DESCHENES' MOTION TO
DISMISS SECOND AMENDED
VERIFIED COMPLAINT**

Before the Court is Defendants Old Town Holdings II, LLC (hereafter "OTH") and Joseph

Deschenes' Motion to Dismiss Counts VII,¹ VIII, and IX of the Second Amended Verified

Complaint (the "Complaint"). Plaintiffs are represented by Attorney Clifford Ginn and Defendants

listed above are represented by Attorney Julia Pitney and Attorney Emily Howe. The Court has

considered the parties' written filings along with their oral arguments made on May 7, 2018 and

for the reasons set out below grants in part and denies in part the Motion.

## PROCEDURAL POSTURE

Plaintiffs Old Town Utility and Technology Park, LLC (hereafter "OTU"), Relentless

Capital Company, LLC, and Samuel Eakin, filed the Complaint on February 9, 2018 in response

to this Court's January 31, 2018 Combined Order on Defendants' Motions to Dismiss (the "Prior

Order"), requiring Plaintiffs to file a more definite statement pursuant to M.R. Civ. P. 12(e) to

---

¹ In their Opposition to this Motion, Plaintiffs clarified and/or conceded that the original Count VII has already been dismissed by the Court in its January 31, 2018 Combined Order on Defendants' Motions to Dismiss, and that Count VII in the Second Amended Verified Complaint was so numbered to prevent a gap in numeration in the later pleading. Therefore, what is actually before the Court is a Motion to Dismiss Counts VIII and IX of the Second Amended Verified Complaint, and the Court will not address any arguments regarding anti-trust claims.

1

address flaws in the Plaintiffs' former pleading identified by the Court in its order. (*See* Prior Order 18-21.) The request for a more definite statement implicated only those causes of action alleged against these Defendants. In the motion now before the Court, Defendants have again moved to dismiss Plaintiffs' Complaint on the grounds that Plaintiffs have failed to remedy the flaws the Court identified in its prior order. (Def's Mot. Dismiss 6, 9.)

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to *de novo* appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## ANALYSIS

Count VIII of Plaintiffs' Complaint alleges breach of contract and Count IX alleges breach of fiduciary duty. As noted in the previous order, there is factual and legal overlap in the allegations made in these two counts. With respect to Count VIII, Plaintiffs allege that Defendants are liable for breach of contract based on the allegation that they breached several duties imposed by OTU's Operating Agreement (hereinafter "OA"), specifically the duty of loyalty, the duty not to exploit a business opportunity without disclosure and offer, and the duty of confidentiality. (Pl's Compl. ¶¶ 155-156.) These allegations are the same as those that form the basis of their claim in Count IX

2

for breach of fiduciary duty. (Pl's Compl. ¶ 164.)

Plaintiffs allege that the OA imposes fiduciary obligations on managers and members involved in management, and the parties agree that the OA is a binding contract.[2] (Pl's Compl. ¶¶ 153-155; Def's Mot. Dismiss 7.) See 31 M.R.S. §§ 1521(1), 1523(2). They do not agree, however, as to whether the certificate of formation (hereinafter "COF") is a contract. The Court has considered the parties' arguments on that issue and concludes that the COF is not a contract. It is instead an "agreement to agree." See, e.g. Muther v. Broad Cove Shore Ass'n, 2009 ME 37, ¶ 6, 968 A.2d 539. The Court therefore concludes that the COF did not impose contractual obligations on the Defendants. See 31 M.R.S.A § 1531(1)(B). Thus, Count VIII states a claim for breach of contract only with respect to the OA. This means that Defendants had no contractual duties before the OA was entered into.

Viewing the Complaint in the light most favorable to the Plaintiffs, the Court concludes that Count VIII alleges facts supporting the allegation that both Defendants[3] had contractual duties under the OA sufficient to survive this motion to dismiss. To be clear, however, no conduct on the part of Defendants prior to the formation of the OA can in and of itself constitute a breach of contract.

Count IX alleges breach of fiduciary duty. As noted above, Defendants do not contest the proposition that the OA imposes this duty as a matter of contract. However, Plaintiffs seem to argue that even if no contract was formed before the OA was executed, Defendants still owed a

---

[2] Plaintiffs attached a document titled "Limited Liability Company Agreement of Old Town Utility & Technology Park, LLC" as Exhibit E to the Complaint. At the oral argument, Defendants' counsel pointed out that the document is unsigned, but was ambivalent about whether she was questioning the document's authenticity. See Moody v. State Liquor & Lottery Comm'n, 2004 ME 20, ¶ 10, 843 A.2d 43 ("narrow exception" allows a court to consider certain extrinsic documents "when the authenticity of such documents is not challenged"). Regardless, the assertion that the OA imposes fiduciary duties on managers and members involved in management seems to be uncontested. (Def's Mot. Dismiss 7.) The Court declines to consider Exhibit E directly, but accepts as true the Plaintiffs' allegation that the OA imposes fiduciary duties on members and managers of OTU.

[3] While OTH is alleged to have been a member of OTU, Mr. Deschenes personally is alleged to have been a manager.

3

common law fiduciary duty to Plaintiffs during this period. (*See* Pl's Compl. ¶¶ 159-164.) Because Count IX alleges breach of the duty of loyalty (as a component of the fiduciary duty) by misrepresentation and omission of material facts, Count IX sounds in fraud. (Pl's Compl. ¶ 163.) The allegations contained in Count VIII likewise allege breaches of the OA through misrepresentation and omission. (Pl's Compl. ¶ 156.) Therefore, the Court must review those restated allegations supporting both Counts VIII and IX under a heightened standard of particularity. *See* M.R. Civ. P. 9(b).

There is no question that the Complaint contains more information than its predecessor. However, with respect to their theory of common law breach of fiduciary duty, Plaintiffs fail to provide particularized allegations of "great disparity of position and influence between the parties" and therefore the Court will grant the motion with respect to the common law breach of fiduciary duty claim. *Ramsay v. Baxter Title Co.*, 2012 ME 113, ¶¶ 7-8, 54 A.3d 710 ("bare allegations" that plaintiff "had inferior knowledge" and "relied upon" defendants are insufficient for breach of fiduciary duty claim to survive motion to dismiss). The Defendants clearly owed fiduciary duties under the OA, but can only be held liable for those breaches pursuant to that agreement.

With respect to the allegations of misrepresentation of facts, the Court concludes that the Complaint, in particular paragraphs 31 through 106, provides the particularity called for under the heightened pleading standard. They lay out the chronology of the relationship between the parties, explain what various parties knew and when they knew certain critical facts, and the actions Mr. Deschenes in particular took at various stages of the negotiations. They allege that he hid the true nature of his relationship with CVG as well as his knowledge of CVG's role in the Con Ed bid. While specific dates are sometimes missing from the allegations, the chronology is sufficiently

4

clear.[*] The Plaintiffs' theory on how Mr. Deschenes allegedly misled his partners, behaved in ways suggesting that he was not acting the interest of OTU and its members but rather to the benefit of their competitor, along with never mentioning these efforts to OTU's other members and managers, has now been sufficiently clarified relative to the prior pleading that the Court is satisfied the standard has been met. *See* M.R. Civ. P. 9(b). (*See* Pl's Compl. ¶¶ 31-156.) It remains to be seen whether Plaintiffs will be able to establish proof by clear and convincing evidence with respect to the fraud allegations, but they will be allowed to develop a factual record to attempt to meet that standard. *See Harris Mgmt. v. Coulombe*, 2016 ME 166, ¶ 26 n.7, 151 A.3d 7.

## CONCLUSION

Based on the foregoing, the entry will be:

Defendants' Motion to Dismiss is granted in part and denied in part.

Defendants' Motion to Dismiss is DENIED as to Count VIII.

Defendants' Motion to Dismiss is GRANTED as to Count IX. Plaintiffs may pursue their claims for breach of fiduciary duty only under their claim for breach of contract, and to the extent that duty is imposed by the OA.

5 | 24 / 18

**DATE**

**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER COURT**

Entered on the Docket: 5/25/18
Copies sent via Mail___ Electronically ✓

---

[*] Defendants fault Plaintiffs repetitive use of the phrase "upon information and belief" but the Court concludes this language is not problematic given Plaintiffs' decision to file a "verified" complaint.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-17-11 ✓

OLD TOWN UTILITY &
TECHNOLOGY PARK, LLC, et al.

Plaintiffs,

v.

MFGR, LLC, et al.

Defendants.

)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFFS'
MOTION
FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiffs Old Town Utility and Technology Park, LLC's

("OTU"); Relentless Capital Company, LLC's ("Relentless"); and Samuel Eakin's ("Eakin")

motion for preliminary injunction brought pursuant to M.R. Civ. P. 65(b). Plaintiffs seek to enjoin

Defendants MFGR, LLC ("MFGR") and William Firestone ("Firestone") from directly or

indirectly affecting transfer of any real property, improvements, fixtures, or equipment, or other

property and rights associated with the Expera Mill Facility (the "Facility"). Defendants oppose

the motion.[1] The Court heard oral argument on January 5, 2018 at the Capital Judicial Center in

Augusta, Maine. Clifford Ginn, Esq., appeared for Plaintiffs and Daniel Mitchell, Esq. appeared

on behalf of Defendants.

**FACTUAL BACKGROUND**

The Court incorporates by reference the Factual Background section on pages 1-5 of its

Combined Order on Defendants' Motions to Dismiss (the "Combined Order") filed this same

---

[1] Plaintiffs do not seek to enjoin Defendants Old Town Holdings II, LLC, and Joseph Everett Deschenes
(the "OTH Defendants") from affecting transfer of the Facility. The OTH Defendants nonetheless filed an
opposition to Plaintiffs' motion for the purpose of joining the objection filed by MFGR and Firestone. Julia
Pitney, Esq., appeared for the OTH Defendants at the oral argument.

1

day, January 31, 2018, in this action.

## STANDARD OF REVIEW

In order to prevail on a motion for a preliminary injunction, the plaintiff has the burden of proving:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), (4) that the public interest will not be adversely affected by granting the injunction.

*Ingraham v. Univ. of Me.*, 441 A.2d 691, 693 (Me. 1982). These criteria "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper." *Dep't of Envt'l Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989). Because injunctive relief is an equitable remedy, this Court's grant of injunctive relief is reviewed on appeal for an abuse of discretion. *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 11, 837 A.2d 129.

## DISCUSSION

I. PLAINTIFFS HAVE FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

A. Only Count I is Relevant to the Analysis of Plaintiffs' Likelihood of Success on the Merits.

Plaintiffs seek injunctive relief in Count I, Count II, and Count VII. The remaining counts seek only damages, and not injunctive relief. Defendants posit that only those counts which explicitly seek injunctive relief may serve as the basis for a preliminary injunction. *Bar Harbor Bank'g & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980); (Def's Opp'n 5.) This presupposition goes unchallenged in Plaintiffs' reply. The Court thus narrows its focus on Plaintiffs' likelihood of success on the merits to only those counts which seek an injunction in

2

their prayer for relief for purposes of deciding this motion.

Count I states a claim for breach of contract, alleging that MFGR breached a binding agreement between OTU and MFGR whereby MFGR would transfer the Facility, or certain Facility assets, to some combination of OTU and the City of Old Town. (Pl's Compl. ¶¶ 22, 96-101.) Count II seeks specific performance of that agreement. (*Id.* ¶¶ 102-109.) Specific performance is an equitable remedy, not a cause of action. The Court therefore treats Count II as a prayer for relief for MFGR's breach of contract pled in Count I. No independent analysis of this count is required, as Plaintiffs' entitlement to specific performance is entirely dependent on their success in Count I.

Count VII likewise is irrelevant to Plaintiffs' instant motion. Although Plaintiffs seek injunctive relief for the violation of Maine's antitrust statutes[2] alleged in Count VII (*Id.* ¶¶ 127-139), only the attorney general of the State of Maine may seek injunctive relief pursuant to those statutes. *State v. MaineHealth*, 2011 ME 115, ¶ 8, 31 A.3d 911.

## B. Plaintiffs Have Failed to Demonstrate A Likelihood of Success on the Merits on Count I

As noted above, Count I alleges that MFGR breached a purported agreement to sell the Facility to OTU and the City. Because Count I is brought only by Plaintiff OTU against solely Defendant MFGR, in the interest of clarity, the Court will refer to these parties by name for the balance of this Order. In its motion to dismiss and again here in opposition, MFGR argues that OTU's breach of contract claim cannot succeed, because the purported contract fails to satisfy Maine's statute of frauds, which requires that any contract for the sale of land be in writing and signed by the party to be charged therewith. 33 M.R.S.A. § 51(4). OTU counters that an offer letter

---

[2] 10 M.R.S.A. §§ 1101-1108.

dated April 28, 2016 from the City to MFGR, which was countersigned by Firestone, is an enforceable contract for the sale of the Facility which satisfies the statute of frauds.[3] OTU thus stylizes this letter the "4/28/16 Agreement," and the Court will refer to it as such in this Order. In the alternative, OTU argues that the doctrine of part performance applies here as an exception to the statute of frauds.[4]

As discussed in the Combined Order,[5] the 4/28/16 Agreement does not expressly include OTU. OTU has nonetheless claimed that it has standing to enforce the 4/28/16 Agreement as the City's "assign;" or, in the alternative, as the third party beneficiary of the contract. Although these theories were sufficient to survive a motion to dismiss, the Court finds that OTU has failed to demonstrate there is a substantial possibility that it will prevail under either theory.

At the outset, MFGR has challenged the enforceability of the 4/28/16 Agreement. (Def's Reply Mot. Dismiss at 1 n. 1.) On its face, the letter in "general terms" outlines a transaction structure "with the intent to convert [the letter] into a mutually agreeable binding contract . . . ." MFGR's principal argument for purposes of its motion to dismiss and in opposition to the instant motion has been that OTU lacks standing to enforce the 4/28/16 Agreement to the extent that it is a binding instrument between MFGR and the City. However, it has not waived the argument that the 4/28/16 Agreement is a mere proposal that is not enforceable by any party.

---

[3] Plaintiffs attached as "Appendix 1" to their motion a 23-page unexecuted agreement for the sale of certain land and assets associated with the Facility that is dated "__ day of July 2016." In the Factual Background section of Plaintiffs' motion, it is described as a "draft" resulting from negotiations between OTU, MFGR, and the City; and Plaintiffs allege that MFGR "verbally agreed to all [its] material terms." (Mot. 11.) Appendix 1 goes unmentioned in the Argument section of the motion, whereas the 4/28/16 Agreement is discussed extensively there and in Plaintiffs' opposition to the MFGR Defendants' motion to dismiss. *See* note 4 *infra.*

[4] These arguments were not raised by Plaintiffs in their motion for preliminary injunction. However, in their reply brief, Plaintiffs incorporate by reference the material in their opposition to the MFGR Defendants' motion to dismiss. (Pl's Reply 1.)

[5] The Court incorporates by reference Part I.A., pp. 5-8, of the Combined Order.

4

OTU claims that "the City in fact assigned its rights [under the 4/28/16 Agreement] to OTU" and that there was "clear mutual acknowledgement of the validity of the assignment" amongst OTU, MFGR, and the City. (Pl's Opp'n to Def's Mot. Dismiss 4.) "For an assignment to be enforceable there must be an act or manifestation by the assignor indicating the intent to transfer the right to the assignee." *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 11, 732 A.2d 264. Our Law Court has suggested that circumstantial evidence is insufficient to satisfy this requirement of an "act or manifestation." *Id.* ("no evidence of a manifestation of . . . intent to transfer the contract rights" in the absence of direct evidence of such an assignment). Beyond a course of dealing between OTU, MFGR, and the City, OTU has not alleged any "act or manifestation" on the part of the City which indicates its intent to transfer its rights under the 4/28/16 Agreement to OTU.

In *F.O. Bailey Co. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me. 1992), Maine adopted the Restatement (Second) of Contracts § 302 test for whether a third party beneficiary is an intended beneficiary with a right to enforce the agreement: "A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." The *F.O. Bailey* Court cautioned that an intent to create an enforceable benefit in a third party must be "clear and definite." *Id.* In *F.O. Bailey*, a commercial condominium tenant purported to be a third-party beneficiary of a construction contract between the condominium and a contractor. *Id.* at 467. Despite evidence that the tenant had negotiated with the contractor's architect for the completion of certain work, that the contract required that the contractor complete the work in such a way as to allow the tenant's business to remain open, that some of the work benefitted the tenant exclusively, and that the tenant showed great interest in the work and spent time following its progress, the Law Court held that

5

these circumstances could not generate a factual issue as to whether the tenant was an intended third-party beneficiary with a right to enforce the contract. *Id.* at 467-68.

Subsequent Law Court authority has emphasized the high bar OTU must clear in order to prevail as a third-party beneficiary. *See Denman v. Peoples Heritage Bank*, 1998 ME 12, ¶¶ 8-9, 704 A.2d 411; *Devine v. Roche Biomedical Labs.*, 659 A.2d 868, 870 (Me. 1995) ("In the absence of contract language, there must be circumstances that indicate with clarity and definiteness that [the promisee] intended to give [the putative third-party beneficiary] an enforceable benefit under the contract."). *See also Thompson v. Miles*, 741 F. Supp. 2d 296, 307 (D. Me. 2010).

Finally, it is unlikely that the doctrine of part performance will operate here as an exception to the statute of frauds. "After having induced or knowingly permitted another to perform in part an agreement, on the faith of its full performance by both parties and for which he could not well be compensated except by specific performance, the other shall not insist that the agreement is void." *Landry v. Landry*, 641 A.2d 182, 183 (Me. 1994). OTU has alleged that it and the other Plaintiffs undertook a significant amount of work on various projects related to getting the Facility sold and operational, but has not explained why an award of money damages is an inadequate remedy. As discussed in Part II.A. *infra*, this was a business venture for profit. Money damages should be adequate. Furthermore, OTU is suggesting a novel application of the doctrine of part performance. The prototypical application of the doctrine would be partial payment. *See id.* Under a promissory estoppel theory, substantial physical improvements to land have also been held adequate to except a contract for the sale of land from the dictates of the statute of frauds. *See Harvey v. Dow*, 2008 ME 192, ¶ 13, 962 A.2d 322 (purchaser built house on lot); *Tozier v. Tozier*, 437 A.2d 645, 648-49 (Me. 1981) (donee built house and outbuildings on lot). OTU analogizes "the web of future tenants, public financing, and business modeling" acquired and developed by

6

Plaintiffs to partial payment for, or physical improvement to, the Facility. (Pl's Opp'n to Def's Mot. Dismiss 3.). The Court is not convinced that there is a substantial possibility that this novel application could be adopted under Maine law.

Because OTU has failed to demonstrate a substantial possibility that it will prevail on Count I, the Court thus finds that this factor weighs against granting Plaintiffs' motion.

## II. PLAINTIFFS HAVE FAILED TO MAKE A SUFFICIENT SHOWING AS TO THE REMAINING FACTORS

### A. Irreparable Harm

Plaintiffs claim that they will be irreparably harmed if the Facility is sold to another buyer because their business model could only be executed there, and that "there is not a single other site in the world" where it could be. (Mot. 18.). Defendants counter that whatever harm Plaintiffs have suffered can be quantified and remedied through an award of damages. Defendants also attach affidavits from Mr. Firestone, Mr. Mayo (City Manager of Old Town), and Mr. Deschenes (principal of OTH) suggesting that OTU's claim of irreparable harm lacks merit because OTU lacks the resources to purchase the Facility.

In their reply brief, Plaintiffs urge the Court to disregard Defendants' affidavits as not credible and counter the attack on Plaintiff's capacity to purchase the Facility, but have no retort for the Defendants' argument that Plaintiffs' harm is strictly economical. The Court is thus satisfied that Plaintiffs' harm, if any, is financial in nature and can be remedied by an award of money damages. In sum, the Court finds that this factor weighs against granting Plaintiffs' motion, as Plaintiffs have not demonstrated that the sale of the Facility to another buyer will result in irreparable harm to Plaintiffs.

### B. Balance of Harms and the Public Interest

The Court has carefully considered the arguments presented by both sides as to these

7

factors, but decides that they weigh neither for nor against granting Plaintiffs' motion. The balance of harms essentially boils down to a credibility determination: OTU claims they remain willing to buy the Facility; MFGR claims that OTU lacks the resources, and that CVG is ready to purchase the Facility. Based on the record now before it, the Court is unable to determine whose position is more credible. The Court is convinced that an operational Facility will serve the public interest—a point raised by both sides—but determines that the public interest would be well-served by an operational Facility regardless of who owns or operates it.

## CONCLUSION

By reason of the foregoing it is hereby ORDERED:

That Plaintiffs' motion for preliminary injunction is **DENIED.**

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

1/31/1r

**DATE**

**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER COURT**

Entered on the Docket: *1-31-18*
Copies sent via Mail___Electronically ✓

8

Old Town Utility & Technology Park, LLC
Relentless Capital Company, LLC., and
Samuel Eakin


v.


MFGR, LLC., William Firestone, Old Town Holdings, II., LLC.,
& Joseph Everett Deschenes


Old Town Utility & Technology Park, LLC
Relentless Capital Company, LLC., and
Samuel Eakin

        Counsel:                 Gin Clifford, Esq.
                                 62 Marion Jordan Rd
                                 Scarborough, ME 04074


Old Town Holdings, II., LLC.

        Counsel:                 Julia Pitney, Esq.
                                 Emily Howe, Esq.
                                 84 Marginal Way
                                 Suite 600
                                 Portland, ME 04101-2480


MFGR, LLC., and William Firestone

        Counsel:                 Meredith Eilers, Esq.
                                   Daniel Mitchell, Esq.
                                 PO Box 9729
                                 100 Middle Street
                                 Portland, ME 04104-5029

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-17-11

OLD TOWN UTILITY &
TECHNOLOGY PARK, LLC, et al.

   Plaintiffs,

  v.

MFGR, LLC, et al.

   Defendants.

)
)
)
)
)
)
)
)
)
)

**COMBINED ORDER ON
DEFENDANTS' MOTIONS
TO DISMISS**

This matter is before the Court on Defendants MFGR, LLC's ("MFGR") and William Firestone's ("Firestone") (collectively the "MFGR Defendants") motion to dismiss all counts against them and Defendants Old Town Holdings II, LLC's ("OTH") and Joseph Everett Deschenes's ("Deschenes") (collectively the "OTH Defendants") motion to dismiss all counts against them. Plaintiffs Old Town Utility and Technology Park, LLC ("OTU"); Relentless Capital Company, LLC ("Relentless"); and Samuel Eakin ("Eakin") oppose the motion. Oral argument was heard on January 5, 2018 at the Capital Judicial Center in Augusta, Maine. Clifford Ginn, Esq. appeared on behalf of Plaintiffs. Daniel Mitchell, Esq. appeared on behalf of the MFGR Defendants and Julia Pitney, Esq. appeared for the OTH Defendants.

## FACTUAL BACKGROUND[1]

This case arises out of a disputed transaction for the sale and purchase of the former Expera Mill Facility (the "Facility") in the City of Old Town, Maine, ("Old Town," or the "City") which includes approximately 300 acres of land, roughly 400,000 square feet of warehouse building, a

---

[1] The information in this section is taken in large part from Plaintiffs' First Amended Verified Complaint (the "Complaint").

1

wastewater treatment plant, a 16MW biomass boiler, and other miscellaneous industrial assets. (Compl. ¶ 4.) MFGR purchased the Facility from its former owner on or about January 27, 2016. (Compl. ¶ 5.) Firestone is the principal of MFGR. (Compl. ¶ 3.)

Relentless, acting through Eakin, and James W. Sewall Company ("Sewall"), acting through its president and CEO David Edson ("Edson"), formed OTU on or about December 15, 2015, for the purpose of acquiring or leasing and redeveloping the Facility. (Compl. ¶ 6.) OTH later joined OTU through its principal, Deschenes, the former manager of fiber and logistics at the Facility. (Compl. ¶ 7.) When and to what extent OTH and Deschenes began working with or joined OTU is disputed, but by July 15, 2016, the three members executed an operating agreement for OTU giving each member equal one-third ownership of OTU and naming Edson, Eakin, and Deschenes its managers. (*Id.*)

Eakin's work on acquiring or leasing and redeveloping the Facility went three directions in 2016. One project involved securing contracts for the provision of steam and power from the Facility's power and boiler assets with the University of Maine (the "University"). (Compl. ¶¶ 14-17.) Eakin undertook this work through Relentless and partnered with another entity, Consolidated Edison Solutions ("ConEd"). (*Id.*) This "ConEd Team" was ultimately invited to participate in "Phase II" of the University's bidding process. (Compl. ¶¶ 19, 68.) Sometime thereafter Relentless was removed from the team. (Compl. ¶ 68.)

Meanwhile, OTU was negotiating with MFGR (the Facility's owner) and Old Town to facilitate the sale of the Facility's wastewater treatment plant and warehouses. (Compl. ¶ 9-10, 20.) In March 2016, MFGR and OTU executed an agreement whereby OTU would provide services for compensation (the "Advisory Agreement") to that end. (Compl. ¶¶ 20-21.) Pursuant

2

to the Advisory Agreement, OTU secured[2] financing and developed a transactional framework agreeable to all parties. (Compl. ¶¶ 22-29, 32.) The terms of this proposed transaction were reduced to writing in an offer letter dated April 28, 2016 from the City to MFGR which was countersigned by Firestone. (Compl. ¶ 32.) This letter was a binding[3] letter of intent and is thus styled the "4/28/16 Agreement" by Plaintiffs, and will be so referenced in this Order. The letter proposes purchase of the Facility by the City "and/or its assigns;" Plaintiffs allege that MFGR, the City, and OTU understood the City's "assigns" to mean OTU. (Compl. ¶ 33.)

Through Relentless, Eakin was simultaneously developing a business model for the Facility. (Compl. ¶ 35.) As part of this process, OTU's managers met with representatives of the Carrier, Varney, and Gardner families (the "CVG families") regarding securing timber assets to fuel the facility because these three families owned substantial timberland in the State of Maine. (Compl. ¶ 37-38.) The CVG families formed CVG, Inc. ("CVG") in January 2015 to pursue their joint interests. (Compl. ¶ 38.) CVG allegedly came to view Relentless's proposal as a threat and recognized that acquiring the Facility would better serve its interests. (Compl. ¶ 43.) CVG also became part of the ConEd team, as Relentless was removed from the ConEd team and replaced with Penobscot Energy and Fiber, LLC, which was formed by CVG and its partners to redevelop the Facility. (Compl. ¶ 68.)

Meanwhile, in June through October 2016, OTU continued to work with the City and MFGR to close the sale of the Facility in accordance with the 4/28/16 Agreement. (Compl. ¶ 51.)

---

[2] The Court appreciates that whether and to what extent OTU was successful in securing financing for the sale of the Facility is a central issue in this litigation and disputed by the parties. The Court uses "secured" here because Plaintiffs allege they were able to secure adequate financing for the transaction and for purposes of a motion to dismiss, the Court must accept all well-pleaded allegations as true. *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123.

[3] The MFGR Defendants challenge whether they are bound by the terms of this letter. (Def's Reply Mot. Dismiss at 1 n. 1.) *See* note 2 *supra.*

3

Problems arose. Changes to the State of Maine's regulatory approach to regulation of stormwater treatment necessitated changes to the proposed ownership structure. (Compl. ¶¶ 52-54). On or about July 5, 2016, OTU's closing attorney circulated a draft buy-sell instrument to the parties; MFGR raised certain concerns, which OTU's closing attorney addressed. (Compl. ¶¶ 54-56.) In early August 2016, OTU and the City discovered that the Facility's tissue building warehouse roof required substantial repairs and they began working with MFGR to address the issue. (Compl. ¶ 62.) By September 1, 2016, emails had been circulated among various representatives of the three parties indicating that the City was waiting only on closing documents discussed in a prior conference call. (Compl. ¶ 70). The City's mayor had subsequently requested those documents from Firestone and the September 1 emails charged MFGR with producing these "exhibits." (*Id.*)

By early October 2016, no closing had occurred. Firestone informed OTU that a competing buyer had emerged, and on October 10, 2016, gave OTU two weeks to respond with a counter-offer. (Compl. ¶¶ 77-78.) On October 24, 2016, Firestone raised issues with the proposed closing that OTU claims dealt with well-settled matters. (Compl. ¶¶ 84-86.) Shortly thereafter MFGR elected to sell the Facility to CVG. (Compl. ¶ 87.)

Plaintiffs filed their nine-count Complaint on September 5, 2017; although much has transpired since then regarding the sale of the Facility, as of that date and up until the entry of this Order, MFGR has not closed a sale of the Facility. (Compl. ¶ 95.) Supplemental briefing and letters to the Court, as well as assertions made at oral argument, suggest that in the time since the Complaint was filed: (1) The deal with CVG failed; (2) e4research.org, a non-profit corporation with a relationship with Sewall emerged as a potential new buyer; (3) that agreement expired by its terms at the end of 2017; and (4) CVG has emerged resurgent in the new year as the prospective buyer. OTU maintains that it is still willing and able to purchase the Facility from MFGR; MFGR

4

has indicated that it is ready to move toward a closing with CVG.

OTU alone brings six counts against only MFGR in this lawsuit: Count I (Breach of Contract: 4/28/16 Agreement), Count II (Specific Performance: Sale of the Facility from MFGR to OTU), Count III (Breach of Contract: Advisory Agreement), Count IV (Promissory Estoppel: Sale of the Facility), Count V (Promissory Estoppel: Advisory Fees), and Count VI (Unjust Enrichment). All Plaintiffs bring two counts against OTH and Deschenes: Count VIII (Breach of Contract: OTU Operating Agreement) and Count IX (Breach of Fiduciary Duty). One Count is brought by all Plaintiffs against all Defendants: Count VII (Restraint of Trade/ Monopoly).

## STANDARD OF REVIEW

In reviewing a motion to dismiss under M.R. Civ. P. 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.*

## DISCUSSION

I. MFGR DEFENDANTS' MOTION TO DISMISS: COUNTS I - IV

The MFGR Defendants have moved this Court to dismiss all counts against them on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted. M.R. Civ. P. 12(b)(6). Plaintiffs counter that they have adequately pled sufficient facts to state a cause of action as to each count. The Court considers each count in turn.

A. Count I: Breach of Contract (4/28/16 Agreement) and
   Count II: Specific Performance (Sale of the Facility by MFGR to OTU)

5

MFGR urges this Court to dismiss Counts I and II[4] on the grounds that OTU's breach of contract claim alleged in Count I is barred by Maine's statute of frauds, which states that no action can be maintained for the sale of land unless the promise, contract, or agreement is in writing and signed by the party to be charged therewith. 33 M.R.S.A. § 51(4). OTU responds that the 4/28/16 Agreement satisfies the statute of frauds, and that because OTU has standing to enforce that agreement, the statute of frauds is satisfied. In the alternative, OTU argues that the doctrine of part performance applies, and operates as an exception to the statute of frauds.

The 4/28/16 Agreement is a letter of intent from Old Town to Firestone (and countersigned by same) regarding the City's proposed purchase of the Facility (or the "Old Town Mill Site," as it is referred to in the letter).[5] The 4/28/16 Agreement does not mention OTU by name. OTU alleges that where the letter refers to the "[City of Old Town] and/or its assigns," it is referring to OTU as the City's assignee in the proposed transaction. MFGR argues that even if the 4/28/16 Agreement is an enforceable written contract for the sale of the Facility, OTU lacks standing to enforce the agreement, because it is between MFGR and the City.

OTU claims it has standing to enforce the agreement under two theories. First, OTU claims an independent right to enforce the agreement as the City's "assign." OTU alleges that all parties to the agreement understood that OTU was the City's assign under the 4/2816 Agreement. (Compl. ¶ 33.) OTU further alleges that from the time the 4/28/16 Agreement was entered into, OTU acted on behalf of both OTU and the City, with the City and OTU determining which assets the City

---

[4] As the MFGR Defendants point out in their motion, specific performance is an equitable remedy, not a cause of action. (Mot. Dismiss at 3 n. 2.) The Court therefore treats Count II as a prayer for relief for MFGR's breach of the 4/28/16 Agreement plead in Count I.

[5] Plaintiffs attached a copy of the 4/28/16 Agreement to the Complaint as Exhibit D, and it is central to OTU's breach of contract claim. The Court thus may consider the document without converting the MFGR Defendants' motion to one for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

6

would purchase and lease to OTU and which assets OTU would purchase outright. (*Id.*) The Complaint alleges further facts tending to establish that the City in fact assigned its rights under the 4/28/16 Agreement to OTU. (*See* Compl. ¶¶ 51-58, 62-66)

OTU also argues that even if these facts are insufficient to establish an independent right to enforce the 4/28/16 Agreement as the referenced "assign," they at least establish a course of dealing among OTU, MFGR, and the City sufficient to establish that OTU is an intended third-party beneficiary of the 4/28/16 Agreement. In *F.O. Bailey Co. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me. 1992), Maine adopted the Restatement (Second) of Contracts § 302 test for whether a third party beneficiary is an intended beneficiary with a right to enforce the agreement: "A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." The *F.O. Bailey* Court cautioned that while an intent to create an enforceable benefit in third party must be "clear and definite," it is nonetheless a factual determination and such intent may be "expressed in the circumstances surrounding" the contract's execution. *Id.*

This Court rules that OTU has alleged sufficient facts to establish its standing to enforce the 4/28/16 Agreement, whether as a party to the contract or as a third party beneficiary thereto.[6] OTU has alleged that it is the "assign" referenced in the 4/28/16 Agreement, and corroborated that allegation with further factual assertions indicating that OTU, MFGR, and the City all understood OTU to be the City's "assign" under the 4/28/16 Agreement. The Court therefore **denies** Defendant

---

[6] Because the Court rules that OTU has alleged sufficient facts to establish standing to enforce the signed 4/28/16 Agreement, the Court declines to consider whether the doctrine of part performance would otherwise operate to except the purported agreement to sell the Facility from the requirements of 33 M.R.S.A. § 51(4). The Court further expresses no opinion on whether the 4/28/16 Agreement is binding on any party, an argument that MFGR reserved but did not raise in its motion to dismiss. *See* note 3 of this Order *supra.*

7

MFGR's motion to dismiss as to Count I and Count II.

   B. Count III: (Breach of Contract- Advisory Agreement)

MFGR claims that OTU has inadequately pled a breach of the advisory agreement. It argues that the Advisory Agreement expired by its terms prior to OTU's performance, triggering MFGR's right to terminate the Advisory Agreement. OTU counters that it performed under the agreement prior to the contract deadlines, or, in the alternative, that any deficiency in meeting those deadlines was waived by MFGR.

The Advisory Agreement provides that MFGR will pay fees to OTU if OTU "facilitate[s] the sale" of two Facility assets (the wastewater treatment plant and the warehouse) to the City or "another buyer acceptable to MFGR but not previously known to MFGR."[7] The Advisory Agreement gives both parties the right to "terminate [the agreement] with respect to any [p]roperty for which there is no executed purchase agreement by the applicable Contract Deadline or no sale as described herein prior to the applicable Closing Deadline." Firestone signed the Advisory Agreement on behalf of MFGR.

The Contract Deadline and Closing Deadlines for both assets are disputed by the parties. The Contract Deadline for the wastewater treatment plant is defined as "within 60 calendar days of the Effective Date;" the Closing Deadline is defined as "within 90 days of the Effective Date." The Contract Deadline for the warehouse is defined as "within 30 days of the Effective Date" and the Closing Deadline is defined as "April 30, 2016." The Effective Date of the Advisory Agreement is defined as "March __, 2016." Both Closing Deadlines are followed by the parenthetical "(or such later closing date, if any, to which MFGR and the applicable buyer have

---

[7] Plaintiffs attached a copy of the Advisory Agreement to the Complaint as Exhibit A, and it is central to OTU's breach of contract claim. The Court thus may consider the document without converting the MFGR Defendants' motion to one for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

8

agreed)."

This parenthetical language renders the Closing Deadlines ambiguous on the face of the Advisory Agreement, and OTU has pled facts that suggest that MFGR and the applicable buyer (that is, the City and OTU) agreed to a later closing date. (Compl. ¶¶ 22-29, 32-34, 51-58, 63-64, 70.) Although MFGR points out that the Advisory Agreement includes an integration clause that states the agreement "cannot be amended, modified, or varied except by the written agreement of MFGR and [OTU]," the parenthetical language allowing for a later closing date is already a part of the integrated document.

The Contract Deadline, however, is a date certain, albeit fixed in relation to the undefined Effective Date. While the Effective Date is clearly ambiguous, the plain language of the contract indicates that the parties intended that date to be some day in March of 2016. Even assuming the Effective Date was March 31, 2016, OTU does not allege that it succeeded in obtaining an executed purchase agreement with the City or any other buyer within the Contract Deadline for either party.

OTU first argues that its success in "securing the City as a purchaser" within the Contract Deadline was sufficient performance under the terms of the Advisory Agreement such that MFGR did not have a right to terminate. This is inconsistent with the plain language of the applicable provision, which expressly gives either party the right to terminate the agreement in the event that no purchase agreement is executed by the Contract Deadline, and is silent about the effect of "securing" a purchser. OTU next argues that it has nonetheless stated a claim for breach of contract under the theory "that any deficiency in meeting those deadlines was waived by MFGR's conduct."

Maine has long recognized the principle that one who "by his own act, deprived himself of the power of fulfilment," cannot then escape his obligations under a contract. *Richards v. Allen*, 17 Me. 296, 299 (1840). The modern doctrine of waiver maintains this principle. Waiver is the

9

voluntary or intentional relinquishment of a known right. *Indus. Unif. Rental Svc., Inc. v. Court Pontiac, Inc.*, 355 A.2d 913, 919 (Me. 1976). If a party entitled to a contractual right acts inconsistent with that right, the party "is estopped form asserting that right if renunciation of the waiver would prejudice the party who has relied on it." *Id.* To bar enforcement of a contractual right, the waiver "must have induced a belief in the party who is claiming reliance on that waiver that the waiving party intended voluntarily to relinquish his rights." *Id.* Waiver may be inferred from the conduct of the waiving party. *Id.*

Read in the light most favorable to OTU, OTU has plead sufficient facts to give rise to the inference that MFGR waived its right to terminate the Advisory Agreement for OTU's failure to perform by the Contract Deadline. OTU has alleged that MFGR continued to work with OTU and the City toward the execution of a purchase contract well after the Contract Deadline had run. (Compl. ¶¶ 22-29, 32-34, 51-58, 63-64, 70.) OTU's reliance on this purported waiver is reflected in these same allegations.

OTU has stated a claim for breach of contract for MFGR's failure to perform under the Advisory Agreement. The Court therefore **denies** the MFGR Defendants' motion to dismiss as to Count III.

### C. Count IV: (Promissory Estoppel: Sale of the Facility)

Plaintiffs plead this claim as an alternative avenue of relief if the Court determines that the purported contract between MFGR and OTU for the sale of the Facility is otherwise unenforceable. *See* Part I.A. of this Order, *supra.* "The doctrine of promissory estoppel applies to promises that are otherwise unenforceable, and is invoked to enforce such promises so as to avoid injustice." *Harvey v. Dow*, 2008 ME 192, ¶ 11, 962 A.2d 322. Maine has adopted the definition of promissory estoppel set out in Section 90(1) of the Restatement (Second) of Contracts:

10

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Id.* Maine allows promissory estoppel to enforce promises to convey land that lack a signed writing as required by the statute of frauds. *See Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me. 1978). However, our Law Court has since allowed the exception only where the "action induced" involves substantial, physical improvement to the real estate by the promisee. *See Harvey v. Dow*, 2008 ME 192, ¶ 13, 962 A.2d 322 (purchaser built house on lot); *Tozier v. Tozier*, 437 A.2d 645, 648-49 (Me. 1981) (donee built house and outbuildings on lot). *See also Nappi v. Nappi Distrib.*, 1997 ME 54, ¶ 9, 691 A.2d 1198 ("In the context of the transfer of land, when the donee has made *substantial improvements to the land* in 'reliance upon the promise to convey the land, courts will enforce the promise to convey.'") (quoting *Tozier*, 437 A.2d at 648) (emphasis added).

OTU does not allege that it has made any physical improvements to the land. Instead, OTU argues that it expended substantial time and resources enhancing the value of the Facility in intangible ways (*i.e.* by finding tenants, developing a business plan, and securing financing), and that this induced action is sufficient to enforce the alleged promise to sell the Facility to OTU. However, based on the holdings of *Harvey* and *Tozier*, as well as the dictum from *Nappi* cited above, this Court holds that under Maine law, promissory estoppel operates as an exception to the statute of frauds only where the party seeking to enforce the promise to convey has made substantial, physical improvements to the land in reasonable reliance on the promise.

While the purchasers in *Chapman* did not make substantial improvements to land in reliance on a seller's promise to convey, that case is distinguishable from this one. There, one of the sellers made a specific promise to sign and return the written contract for the sale of property

11

in direct response to an inquiry being specially made because the purchasers were about to undertake a substantial financial commitment in furtherance of the deal. *Chapman*, 381 A.2d at 1127. The *Chapman* Court was explicit that "the doctrine of promissory estoppel [applied] to raise issues of material fact concerning . . . whether [this] *separate ancillary promise* became a contract binding on [the sellers.]" *Id.* at 1126 (emphasis in original). Here, OTU has not alleged that MFGR promised to sign a purchase and sale agreement for the transfer of the Facility. There is thus no separate, ancillary promise by which MFGR can be bound, and the rule since propounded in *Harvey*, *Tozier*, and *Nappi*—that substantial improvement to the land by the promisee is a necessary element for promissory estoppel to except a contract for the sale of land from the statute of frauds' writing requirement—applies in this case.

Because OTU has failed to allege that it made substantial, physical improvements to the Facility or the land on which it sits, OTU has failed to state a claim for promissory estoppel regarding the sale of the Facility by MFGR to OTU. The Court thus **grants** MFGR Defendants' motion to dismiss as to Count IV.

D. Count V: (Promissory Estoppel-Advisory Fees)

The elements of promissory estoppel are recited in Part I.C. of this Order, *supra.* In their Complaint, Plaintiffs allege that MFGR promised to pay OTU fees and costs in return for advisory services pursuant to the Advisory Agreement, that MFGR should have reasonably expected that promise to induce action on the part of OTU, Relentless, and Eakin, and that MFGR's promise in fact did induce action on the part of Plaintiffs. (Compl. ¶ 120-121.) MFGR argues that this count should be dismissed for failure to state a claim because MFGR could not have reasonably expected that OTU would perform outside the terms of the Advisory Agreement (*i.e.* by failing to perform by the contract deadline) and still expect compensation. MFGR further argues that no injustice

12

would result if the purported promise to pay fees was not enforced because Plaintiffs have not performed under the Advisory Agreement, as there has not yet been a closing on the sale of the Facility.

Plaintiffs counter that MFGR should have reasonably expected its promise to induce action on their part because MFGR breached its promise of good faith and fair dealing pursuant to the Advisory Agreement. In other words, Plaintiffs argue that they were induced to continue performance under the Advisory Agreement in bad faith, and that as such expectation of payment was reasonable given the long course of dealing that is alleged in some detail in the Complaint. (*See* Compl. ¶¶ 22-29, 32-34, 51-58, 63-64, 70.)

Viewing these facts in the light most favorable to the Plaintiffs, the inference can be drawn that it was not unreasonable for Plaintiffs to continue to perform under the Advisory Agreement in hopes of future payment based on MFGR's conduct during and after the period for performance recited in the written contract. OTU has alleged that they were induced to continue performing under the Advisory Agreement by MFGR's promise to pay. That is enough to survive MFGR's motion to dismiss. The Court therefore **denies** the MFGR Defendants' motion to dismiss Count V.

### E. Count VI: (Unjust Enrichment)

OTU pleads unjust enrichment as an alternative avenue to recovery if the Court finds the Advisory Agreement unenforceable. *See June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49 n. 1 (Me. 1996) (stating that the existence of a contractual agreement "precludes recovery on a theory of unjust enrichment"). "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice the law compels performance of a legal and moral duty to pay. . . ." *Paffhausen*

13

*v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269. The elements that a plaintiff must prove to recover for unjust enrichment are (1) that the plaintiff conferred a benefit on the other party (2) the defendant had appreciation of the benefit and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041.

MFGR moves to dismiss Count VI on the grounds that there has been no benefit conferred on them because Plaintiffs' work related to the sale and development of the Facility amounted to "an elaborate marketing proposal . . . that was ultimately rejected." *Id.* ¶ 15. Plaintiffs allege that their labor has enhanced the value of the Facility by millions of dollars above the auction price MFGR would have received absent the Plaintiffs' efforts, thereby conferring a significant benefit on MFGR.

MFGR claims that *Forrest Assocs.* compels dismissal of Count VI. Although this case resembles *Forrest Assocs.* in some respects, the plaintiffs in that case had an opportunity to fully develop the record at a bench trial. Plaintiffs here have alleged facts which, if true, would distinguish Plaintiffs' claim from that brought by the plaintiffs in *Forrest Assocs.* Specifically, the *Forrest Assocs.* Court held that the plaintiffs could not recover under an unjust enrichment theory because "[a]lthough [the plaintiff] created a comprehensive plan and presented it to the [defendants], there [was] no evidence that the [defendants] benefitted from either the presentation or the information contained in the plan" and the evidence demonstrated that the plan was ultimately rejected. *Id.* Under those facts, the evidence failed to establish that the plaintiff had conferred a benefit on the defendant.

In contrast, Plaintiffs here have alleged with some particularity how MFGR benefitted from Plaintiff's plans and proposals. Specifically, Plaintiffs allege that they "laid the foundation for

14

financing from the City and others, recruited and negotiated terms with future tenants that increased the Facility's value and creditworthiness, and played an instrumental role in the winning ConEd [bid]." (Compl. ¶ 124.) Plaintiffs further allege that MFGR knew of and appreciated the value of that benefit, and that the circumstances render the retention of that benefit unjust without compensation paid to Plaintiffs. (Compl. ¶¶ 125-126.)

Plaintiffs have thus stated a claim for unjust enrichment. The Court therefore **denies** MFGR's motion to dismiss as to Count VI.

## II. COUNT VII: RESTRAINT OF TRADE/ MONOPOLY

In Count VII, Plaintiffs allege that MFGR's plan to sell the Facility to CVG is a contract in restraint of trade or commerce in Maine and that a consummated transaction would be a combination in restraint of trade or commerce in Maine, both in violation of 10 M.R.S.A. § 1101.[8] Plaintiffs allege Defendants are all liable as co-conspirators for attempting to facilitate CVG's purchase of the Facility. *Id.*

Defendants move to dismiss on the grounds that (1) Plaintiffs have not alleged an antitrust injury and (2) Plaintiffs have not alleged that Defendants entered into a contract, combination, or conspiracy which restrained trade or commerce in Maine. The Court considers each argument in turn.

### A. Plaintiffs Have Not Alleged An Antitrust Injury

"Maine's antitrust act provides that a plaintiff must prove injury or damage before the plaintiff can recover." *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 19, 977 A.2d 420. Maine courts may consider federal antitrust law as persuasive authority when construing Maine's antitrust statute. *Id.* In the federal context, the U.S. District Court for the District of Maine has clarified that

---

[8] Plaintiffs are not entitled to the injunctive relief they seek under this count. That remedy is available only to the Attorney General. *State v. MaineHealth*, 2011 ME 115, ¶ 8, 31 A.3d 911.

15

a plaintiff "must prove an *antitrust injury*, which is to say an injury of the type the antitrust laws were intended to prevent . . . ." *In re Compact Disc Min. Advertised Price Antitrust Litig.*, 456 F. Supp. 2d 131, 148 (D. Me. 2006) (quoting *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999)) (emphasis added). *See also Int'l Ass'n of Machn's & Aerospace Workers, AFL-CIO, Local. L. No. 1821 v. Verso Paper Co.*, 80 F. Supp. 3d 247, 272 (D. Me. 2015) (citing *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S. 477 (1977)). This Court has previously imposed the same requirement on plaintiffs bringing an antitrust action. *See Central Distribs., Inc. v. Labatt USA Opn'g Co.*, No. BCD-CV-12-33, at 10 (Bus. & Consumer Ct. Oct. 15, 2012, *Horton, J.*). The "presumptive proper" plaintiff to allege an antitrust injury "is a customer who obtains services in the threatened market or a competitor who seeks to serve that market." *In re Compact Disc*, 456 F. Supp. 2d at 146 (citing *SAS of P.R. v. P.R. Tel. Co.*, 48 F.3d 39, 44 (1st Cir. 1995)).

Plaintiffs' antitrust claim stems from the allegation that CVG's acquisition of the Facility would allow it to charge elevated prices for its forest products and prevent the rest of Maine's forest products industry from selling forestry products to another operator of the Facility. (Compl. ¶ 129.) Plaintiffs do not allege that they are consumers of forest products or competitors in the forest products industry who would be harmed from this anticipated anticompetitive behavior. Plaintiffs' alleged damages resulting from CVG's proposed purchase of the Facility are rather "deprivation of the value of purchasing the Facility, exclusion from the team implementing the [ConEd team] bid, and expenditure of time, money, and resources in pursuing the transaction . . . ." (Compl. ¶ 139.) Significantly, these are identical to the damages attributed to the breach of contract count. (Compl. ¶ 101.) The U.S. District Court for the District of Maine—as well as this Court—have held that breach of contract damages are insufficient to establish an antitrust injury. *In re Compact Disc*, 456 F. Supp. 2d at 147-48 ("[Plaintiff's] injuries flow from an alleged breach

16

of contract, unlawful transfer of proprietary information, and breach of fiduciary duty. These are not the type[s] of injury that the antitrust laws were meant to protect [against]."); *Central Distribs.*, BCD-CV-12-33, at 10 ("The gist of this claim is really a restatement of a breach of contract action . . . the complaint fails to state a claim for antitrust statute violations.").

This Court thus rules that Plaintiffs lack standing to bring the antitrust claim alleged in Count VII. Regardless of whether CVG's purchase of the Facility could amount to a violation of Maine's antitrust statute, as alleged, Plaintiffs have failed to allege how they have been injured by this purported anticompetitive activity.

B. Plaintiffs Have Not Alleged Necessary Action
   On The Part Of The Alleged Co-Conspirators

To establish a prima facie case pursuant to 10 M.R.S.A. § 1101, a plaintiff must show: "(1) that the defendants entered into a contract, combination, or conspiracy; (2) which restrained trade or commerce in Maine; and (3) that they were injured thereby for each allegation." *Pease v. Jasper Wyman & Son*, No. KNOSC-CV-00-015, at 18 (Me. Super. Ct., Knox Cty., July 31, 2002). The third element is discussed above, in Part II.B. of this Order, *supra*. Defendants in this case further argue that Plaintiffs have failed to allege facts satisfying the first two elements, and have thus failed to state a claim for antitrust violation on that ground.

The "contract, combination, or conspiracy" alleged by Plaintiffs is the acquisition of the Facility by CVG. (Compl. ¶ 131.) All parties agree that that has not happened, although CVG has apparently resurfaced as the proposed purchaser of the Facility. (Compl. ¶ 95.) Plaintiffs nonetheless argue that MFGR's contract to sell the Facility to CVG is itself a contract in restraint of trade or commerce in Maine. (Compl. ¶ 132.) However, beyond this conclusory allegation, Plaintiffs plead no further facts to show how the purported contract for the sale of the Facility to CVG, standing alone, restrains trade in Maine. Instead, the Plaintiffs suggest that, once

17

consummated, the transaction would "substantially lessen competition or tend to create a monopoly of lines of commerce in Maine . . ." (*Id.*)

The Court rules that Plaintiffs have failed to adequately allege the existence of a "contract, combination, or conspiracy . . . which restrained trade or commerce in Maine." *Pease*, No. KNOSC-CV-00-015, at 18. On its face, the Complaint alleges that a "consummated transaction . . . would" result in a violation 10 M.R.S.A. § 1101—conceding that the Defendants have not yet entered into a contract that has restrained trade in Maine. Factual allegations that some future contract, once consummated, would eventuate an anticompetitive result does not state a claim for a violation of Maine's antitrust statute.[9]

By reason of the foregoing, the Court hereby **grants** the Defendants' motions to dismiss Count VII.[10] Plaintiffs have failed to state a claim for violation of Maine's antitrust laws, 10 M.R.S.A. §§ 1101-1108.

### III.   OTH DEFENDANTS' MOTION TO DISMISS: COUNTS VIII AND IX

Although Count VIII and Count IX recite two separate causes of action—breach of contract and breach of fiduciary duty, respectively—there is factual and legal overlap between the two claims. Count VIII alleges that the OTH Defendants breached OTU's operating agreement *"as well as* their duty of loyalty, their duty not to exploit a business opportunity without first disclosing it to OTU, and their duty of confidentiality" by "facilitat[ing] CVG's opportunity to purchase the

---

[9] Notwithstanding the issues of standing and ripeness on which the Court decides to dismiss Count VII, Plaintiffs have not alleged how this transaction would result in an antitrust violation in any event. In essence, Plaintiffs allege that CVG's acquisition of the Facility would give CVG an advantage over its competitors by substantially lessening competition. That alone is insufficient to allege an antitrust violation. *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 875 F. Supp. 8, 13 (D. Me. 1994) ("[G]aining an advantage over your competitors is not, in itself, a violation of antitrust laws.").

[10] Because the Court rules that Plaintiffs have failed to state a claim against any defendant for violating Maine's antitrust statute, the issue of whether Firestone or Deschenes could be individually liable for the alleged violation is moot. The OTH Defendants also argued grounds for dismissal that were unique to them. This argument is also moot, for the same reason.

18

Facility from MFGR." (Compl. ¶ 143 (emphasis added).) Count IX alleges that the OTH Defendants "breached their fiduciary duty *and* duty of loyalty to OTU through self-dealing, usurpation of corporate opportunity, misrepresentation and omission of material facts, inducement, disclosure and misuse of confidential information, misuse of superior knowledge, failure to disclose, and rendering inappropriate advice." (Compl. ¶ 147 (emphasis added).) As in Count VIII, Plaintiffs allege this breach was committed through the OTH Defendants "facilitation" of CVG's opportunity to purchase the Facility from MFGR. (*Id.*)

It is unclear whether Plaintiffs are pleading a breach of OTU's operating agreement apart from OTH's alleged breach of its fiduciary duties in Count VIII. It is also unclear whether Plaintiffs allege that the OTH Defendants' breached only their duty of loyalty to OTU in Count IX or whether Plaintiffs are alleging a breach of fiduciary duty beyond the expressly stated breach of the fiduciary duty of loyalty. *See Sargent v. Buckley*, 1997 ME 159, ¶ 1, 697 A.2d 1272 (defining duty of loyalty as a fiduciary duty). As grounds for the alleged breach of duty of loyalty, Count IX alleges "misrepresentation and omission of material facts," which sounds in fraud. *See Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). Allegations of fraud are subject to a heightened pleading standard: "In all averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity . . . ." M.R. Civ. P. 9(b). The facts which could give rise to a fiduciary relationship must likewise be pled with particularity. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710.

Plaintiffs have alleged that Deschenes sought to terminate OTH's membership in OTU in August 2016, falsely promised not to act in competition with OTU, and used that false promise to procure Eakin's waiver of OTU's nondisclosure/ noncompete provisions. (Compl. ¶ 59.) This is the only affirmative fraud pled with any particularity in the Complaint. Plaintiffs allege that

19

fiduciary duties were expressly provided for in OTU's operating agreement,[11] and cited to Maine statutory law that suggests Deschenes as manager (and, apparently, OTH as a "member active in management," *see* Pl's Opp, Mot. D. at 5) may have owed fiduciary duties to OTU as a matter of law. *See* 31 M.R.S.A. §§ 1521(3)(A), 1559(3). Plaintiffs allege that Deschenes sought a report on the Facility's tissue building warehouse roof on CVG's behalf. (Compl. ¶¶ 66-67.) Plaintiffs further allege that Deschenes "facilitated" CVG's letter of intent to purchase the Facility from MFGR after Deschenes and OTH had left OTU. (Compl. ¶ 61.) Beyond this, the Complaint contains only general insinuations that the OTH Defendants were working against OTU's interest, and in CVG's interest, while OTH was still a member of OTU. (Compl. ¶¶ 60.)

The Court rules that Plaintiffs have not met the elevated pleading requirements for fraud or the existence of a fiduciary relationship in their Complaint against the OTH Defendants. Particularly, Plaintiffs have alleged nothing to suggest that the OTH Defendants owed Plaintiffs any duty when Deschenes allegedly facilitated the letter of intent between CVG and MFGR. Together with the lack of clarity regarding whether Count VIII alleges a breach of contract beyond the breach of fiduciary duty alleged in Count IX, the Court finds that the OTH Defendants cannot reasonably be required to frame a responsive pleading to these Counts in their current form.

Because the Court finds that the allegations supporting Counts VIII and IX lack sufficient particularity under the heightened pleading standard required by M.R. Civ. P. 9(b) and *Ramsey*, Plaintiffs ask the Court to treat the OTH Defendants' motion to dismiss as a motion for a more definite statement. M.R. Civ. P. 12(e). A motion for a more definite statement is used to remedy pleadings that are "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading" and must "point out the defects complained of and the details desired." *Id.*

---

[11] OTU's operating agreement was not attached to the Complaint and is not currently before the Court.

When such a motion is granted, the pleading party must file a more definite statement within 10 days to remedy the defects highlighted in the motion. *Id.*

Although the Court rules that the causes of action pled in Counts VIII and IX are too vague or ambiguous to allow the OTH Defendants a reasonable opportunity to respond, the Court agrees with Plaintiffs that allowing them an opportunity to plead these counts with the requisite level of particularity and sufficient factual support is appropriate here. Plaintiffs are thus **ordered** to file a more definite statement pursuant to M.R. Civ. P. 12(e). Plaintiffs' more definite statement should plead with sufficient particularity the factual basis for the alleged fiduciary relationship, and to the extent that Plaintiffs allege a breach of a fiduciary duty through fraud, the fraudulent acts of which they accuse the OTH Defendants. Plaintiffs should also clarify whether they are alleging a breach of contract beyond the OTH Defendant's alleged breach of the fiduciary duty of loyalty in Count VIII.

## CONCLUSION

Based on the foregoing the entry will be:

1. The MFGR Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

    a. The MFGR Defendants' motion to dismiss is GRANTED as to Count IV and Count VII.

    b. The MFGR Defendants' motion to dismiss is DENIED as to Count I, Count II, and Count III, Count V, and Count VI.

2. The OTH Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

    a. The OTH Defendants' motion to dismiss is GRANTED as to Count VII.

21

b. The OTH Defendants' motion to dismiss is DENIED as to Count VIII and Count IX. As to those Counts, Plaintiffs are hereby ORDERED to file within 10 days of the entry of this Order a more definite statement pursuant M.R. Civ. P. 12(e) as described in Part III, *supra*, of this Order.

_____
DATE

_____
SUPERIOR COURT JUSTICE
BUSINESS AND CONSUMER COURT

Entered on the Docket: *1-31-18*
Copies sent via Mail___ Electronically_✓_

22

Old Town Utility & Technology Park, LLC
Relentless Capital Company, LLC., and
Samuel Eakin


v.


MFGR, LLC., William Firestone, Old Town Holdings, II., LLC.,
& Joseph Everett Deschenes



Old Town Utility & Technology Park, LLC
Relentless Capital Company, LLC., and
Samuel Eakin

        Counsel:               Gin Clifford, Esq.
                                  62 Marion Jordan Rd
                                  Scarborough, ME 04074


**Old Town Holdings, II., LLC.**

        Counsel:               Julia Pitney, Esq.
                                  Emily Howe, Esq.
                                  84 Marginal Way
                                  Suite 600
                                  Portland, ME 04101-2480


**MFGR, LLC., and William Firestone**

        Counsel:               Meredith Eilers, Esq.
                                    Daniel Mitchell, Esq.
                                  PO Box 9729
                                  100 Middle Street
                                  Portland, ME 04104-5029